IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUN 13 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

SANDRA WILLIS; DAVID KNIGHT;
CHARMAINE WILLIS; DESMOND EARL;
GREGG GLASS; and DEANGELO WILKERSON

**PLAINTIFFS**

V.

CAUSE NO: 2:14cv 8912s-MTP

CITY OF HATTIESBURG;
FRAZIER BOLTON, IN HIS OFFICIAL CAPACITY
AS HATTIESBURG CHIEF OF POLICE;
OFFICER SCOTT MORRISON; OFFICER JASON REED;
LIEUTENANT STEPHON HARRIS;
JOHNNY DUPREE, individually and in his official
capacity as Mayor of Hattiesburg; and
JOHN DOES 1-5

**DEFENDANTS**

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

COME NOW PLAINTIFFS by and through undersigned counsel and pursuant to the laws

of the State of Mississippi and the Constitution of the United States and files this Complaint against

Defendants City of Hattiesburg, Frazier Bolton, Officer Scott Morrison, Officer Jason Reed,

Lieutenant Stephon Harris, and Johnny Dupree and in support thereof would show unto the Court

the following, to wit:

### I. PARTIES

1.      Plaintiffs are adult resident citizens of Forrest County Mississippi who may be contacted

through undersigned counsel.

2.      Defendant City of Hattiesburg is a governmental entity organized and authorized by the laws

of the State of Mississippi who may served with process through the City Clerk at 200 Forrest Street,

Hattiesburg, Mississippi 39402.

3.     Defendant Frazier Bolton, is the Chief of police for the City of Hattiesburg who may be served with process 701 James Street, Hattiesburg, Mississippi 39402.

4.     Defendant Officer Scott Morrison is upon information and belief an adult resident citizen of Forrest County, Mississippi and may be served with process at the Hattiesburg Police Department, 701 James Street, Hattiesburg, Mississippi 39402.

5.     Defendant Officer Jason Reed is upon information and belief an adult resident citizen of Forrest County, Mississippi and may be served with process at the Hattiesburg Police Department, 701 James Street, Hattiesburg, Mississippi 39402.

6.     Defendant Lieutenant Stephon Harris is upon information and belief an adult resident citizen of Forrest County, Mississippi and may be served with process at the Hattiesburg Police Department, 701 James Street, Hattiesburg, Mississippi 39402.

7.     Defendant Johnny Dupree is upon information and belief an adult resident citizen of Forrest County, Mississippi and may be served with process at the City Hall, 200 Forrest Street, Hattiesburg, Mississippi 39402.

8.     Defendants designated as John Does 1 through 5 are, based upon information and belief, certain unknown and unnamed parties who may be liable for the claims asserted herein, who include, but are not limited to, agents, servants, employees, representatives, affiliates, parents, subsidiaries, tortfeasors, joint tortfeasors, contractors, or any other related person or entity of the named Defendants and/or any and all other persons who may be liable to Plaintiffs for the claims asserted herein. Plaintiffs will amend their Complaint once the identities of the unknown Defendants are learned.

## II. JURISDICTION AND VENUE

9.     This honorable Court has jurisdiction and venue over the parties and this cause of action pursuant to 28 U.S.C. 1331.

10.    Venue is proper because the present action has been commenced where at least one of the individual defendants reside and/or where the acts and omission complained of occurred.

11.    On or about July 17, 2013 the Plaintiffs, by and through Counsel, caused to be served by personal service to the Defendants a notice of claim pursuant to the Mississippi Tort Claims Act, Miss. Code Ann. 11-46-11. **Exhibit A**. Plaintiffs reserve their right to amend the Complaint at a later date to include torts named in the Notice of Claim.

12.    This action is authorized under 42 U.S.C. 1983 and made pursuant to the fourth and fourteenth amendments to the United States Constitution, 42 U.S.C. 1985 and 42 U.S.C. 1981.

## III. FACTS

## GENERAL ALLEGATIONS

13.    On June 14, 2013 a number of African-Americans had gathered in and around 2406 W. 4th Street (hereinafter known as "Dynasty") in Hattiesburg, Mississippi to celebrate the ending of slavery in the United States, more commonly known as "Juneteenth." The entire day was filled with celebratory barbecuing, games, and other festivities along this area of 4th Street in Hattiesburg.

14.    The area in and around Dynasty, including the stores, car-wash, and other hair salons across and down the street were also the sites of lawful gatherings to celebrate and commemorate Juneteenth.

15.    The lawful gatherings and celebrations took place over the course of the entire day and were expected to go throughout the weekend and provide an economic boost for an area of economic

depression along 4th Street.

16.     The defendants were aware, prior to June 14, 2013 that these lawful gatherings and celebrations would take place in that area long Fourth Street.

17.     At some point in the evening, after no other officer made a drive by, several officers were summoned to Hattiesburg Police Department to prepare for "a raid" on Dynasty. At this point, no eyewitness or officer had witnessed any illegal activity, and the only other information was an anonymous phone call from a lady, not in the vicinity of 4th Street, who stated there may be some gambling and may be some smoking behind Dynasty. The caller never stated that she was witnessing any alleged illegal activity, and in the hours which ensued, the Defendants never attempted to obtain a warrant or to verify any illegal activity prior to raiding Dynasty.

18.     At approximately 7:22 Officer Rooke drove past Dynasty but did not see any illegal activity transpiring, and Officer Rooke decided to wait for additional officers before investigating on foot. No investigation ever took place, and Officer Rooke had no further involvement with Dynasty on June 14, 2013. Officer Rook had spoken to Lt. Stephon Harris regarding the call for service but Lt. Harris could not be bothered.

19.     Without any probable cause or credible evidence, members of the Strike Team and NET (Neighborhood Enhancement Team), along with other members of the Hattiesburg Police Department, numbering in excess of twelve (12) officers, were amassed to conduct a draconian raid on Dynasty in reference to the call made several hours earlier about possible smoking and gambling in which the caller had not actually viewed any smoking or gambling. No police officer ever confirmed that he witnessed an illegal *activity* at Dynasty on June 14, 2013 and one officer admitted that prior to the raid that no attempt was made to obtain a warrant "because we never had probable

cause".

20.     After sundown, June 14, 2013, the raid commenced with officers arriving in the vicinity of Dynasty. Several officers parked at the corner of 4th Street and Shelley Avenue where the marked police cars were parked so as not to be seen by patrons in and around Dynasty and the surrounding area. Another group of officers parked their vehicles along 25th Avenue effectively surrounding Dynasty and leaving no point for escape for any individual without police interception. The officers then, without a warrant, initiated their unprovoked and unconstitutional raid of Dynasty.

21.     The officers descended upon Dynasty in swat team fashion with guns drawn and with no warrant, no notice, no probable cause and no identification. The officers knew that there was no reasonable way for anyone at Dynasty to "escape", because all entries and exits were covered by police officers wearing dark colored fatigues and little to no artificial lighting in the area which was by then dark.

22.     No officer asked for permission from property owner Sandra Willis to search the property. No officer witnessed any illegal activity at any time before or during the raid. At all times prior to the raid, Sandra Willis was inside Dynasty Hair Salon lawfully cutting and styling hair to make a living, while David Knight and others were barbecuing for customers to show their appreciation for patronage and to celebrate the Juneteenth weekend.

23.     The officers, guns drawn, swarmed down the private driveways on the east side and the west side of the building in military like fashion. Upon rounding a corner immediately behind Dynasty, several officers immediately made contact with and threw David Knight and Desmond Earl to the ground.

24.     Frightened by the abrupt nature of the raid, several people began to run and spread out because they did not know or realize what was going on. No officer announced their presence until after they came around the corner behind Dynasty. The only thing anyone could see was a flashlight and a gun pointed at them in an erratic fashion.

25.     One officer placed the barrel of his pistol down the pants of a currently unknown third party, making the unknown party wet himself in fear, clearly outrageous and reckless behavior by law enforcement.

26.     There were approximately thirty patrons of Dynasty and other businesses behind Dynasty when the raid occurred. The officers recovered a lawfully possessed handgun and located a *de minimus* amount of what was claimed to be marijuana on the ground.

27.     During the unlawful raid, numerous people were beaten and assaulted by the officers and several sustained serious injuries which required medical attention. (Cumulative **Exhibit B**, photos of plaintiffs) No party was accused of any violent crime, nor was any party ever deemed a threat to officers or others. Despite this, the officers unlawfully searched, seized, and arrested most of the patrons and all of the named plaintiffs.

28.     No Plaintiffs were given Miranda warnings prior to or after their unlawful arrest, search or seizure.

29.     Several officers were reported as telling witnesses that Mayor Dupree had sent them to shut down the shop.

30.     The raid conducted by the Defendants was performed within the scope of employment as officers with the police department and the City of Hattiesburg.

31.     This raid and the unlawful arrest were immediately reported by the Defendants to news outlets with the intent to be published and harm the reputations of the within named Plaintiffs with the knowledge that the stories to be reported contained knowingly false and exaggerated information. Defendants knew that a lawfully possessed handgun and unidentified substance were recovered, yet maliciously reported that guns and drugs were recovered as a result of the raid implying a significant criminal act denying Plaintiffs their constitutional rights to due process.

32.     Another raid occurred on October 17, 2013 just minutes after Mayor Johnny Dupree and other city officials finished inspecting road construction directly in front of Dynasty hair salon. No officer identified themselves or presented any identification claiming to be an officer or agent of the law. During this raid, the officers ran into Dynasty, ordered several individuals on the ground, guns drawn, and held the individuals without cause, despite demands from Plaintiffs to know who they were and why they were there.

33.     Before June 14, 2013, Dynasty has been the subject of at least two prior raids, and not once has any unlawful activity or evidence been discovered.  These raids are a result of employees and the owners refusal to support the current Mayor and administration of Hattiesburg during elections over the summer of 2013.

SPECIFIC ALLEGATIONS - DAVID KNIGHT

34.     Plaintiffs hereby adopt and re-allege all previous stated paragraphs as though fully restated herein.

35.     David Knight (hereinafter "Knight") is the son of the owner of Dynasty, Sandra Willis. Knight also worked at Dynasty to assist his mother in her day to day activities in running a successful hair salon.

36.    Knight has no criminal background and has been nicknamed "Punkin" because of his good nature and general disposition.  Knight was also pursuing a career as a pipe-fitter and welder just prior to the actions of the Defendants which have left Knight physically injured and severely traumatized and unable to pursue a career as a pipefitter.

37.    On June 14, 2013 Knight was helping his mother at Dynasty because it was a very busy and celebratory day. As was Dynasty's disposition, on busy days, Dynasty would host barbecues behind the shop to show customer appreciation and give patrons something to do while waiting for a hair cut. On occasion, patrons would play horseshoes, dominos, cards, or just congregate in general. The Juneteenth weekend was no exception and patrons were lawfully congregating at a private business, and not in plain sight.

38.    Knight spent June 14, 2013 running errands and keeping patrons generally entertained. The day was busy and without any significant occurrence until approximately nine to nine-fifteen that evening.

39.    Knight was situated on the patio, located on the East corner of the rear of the building. When the raid commenced, Knight was one of the very first people whom the officers literally ran into as they rounded the corner to begin the raid. Knight, startled by the sudden appearance of multiple flashlights and firearms, took a few steps back as a precaution. At that time, Knight was violently knocked to the patio floor and was kicked by officers.

40.    At this time Knight realized that these were police officers and Knight demanded their names and badge numbers. Infuriated by this protected speech, the officers continued to beat Knight to which Knight responded they were on camera.  Assuming they were on camera, officers picked Knight up in handcuffs, brushed him off, and placed him in-between two cars where the beating

continued and Knight was sprayed with mace/pepper spray. At no point did any officer's report ever say that Knight was dangerous or that he was resisting arrest.

41.     Knight was placed in handcuffs by Officer Reed. Knight was then drug by his hair with such force to the West side of the building that several braids were painfully ripped out and left on the ground by officers. Knight dutifully informed officers that he lawfully possessed a pistol in his pocket, which the officers removed.

42.     While seated against a fence, Knight protested his treatment and seizure and was again sprayed with mace/pepper spray, while handcuffed, in retaliation for Knight's protest and screams for help. At this point, Knight's mother Sandra Willis had learned of the raid outside and ran outside to hear her son screaming for help, and Sandra Willis witnessed her son being beaten and sprayed with mace.

43.     Knight bloodied and bruised was eventually placed into a police patrol car. While in route to the jail, Knight was repeatedly told that if he said another word, the beating would continue and that he was lucky he was not beaten more severely.

44.     After being released from the jail, Knight sought treatment for his injuries from Forrest General Hospital.

45.     At no point did Knight resist arrest nor did Knight ever pose a threat to the safety of any officers involved. Knight had cooperated with officers to the best of his ability. Knight was not charged with any violent crime.

46.     Further, despite exculpatory evidence, the defendants continued to prosecute Knight and his family for crimes which the defendants know they are not guilty.

## SPECIFIC ALLEGATIONS - SANDRA WILLIS

47.     Plaintiffs hereby adopt and re-allege all previous stated paragraphs as though fully restated herein.

48.     Sandra Willis (hereinafter "Willis") is the owner of Dynasty Hair Salon and was conducting her lawful business on June 14, 2013 when the unlawful raid and egregious conduct of the Defendants occurred.

49.     Sandra Willis refused to support Mayor Johnny Dupree's re-election in the 2013 mayoral election. As a result, Ms. Willis has been harassed several times by the Dupree Campaign for her refusal to support Dupree.  Upon information and belief, much of the continued police harassment and continuing raids by the Defendants is based upon Willis's refusal to support Dupree's 2013 mayoral campaign.

50.     The Defendants have harassed Willis numerous times over the past few years conducting multiple raids at Dynasty, and each time leaving without any arrest and without finding anything to support the raids.

51.     The City and the Police Department have set about to force minority entrepreneurs such as Willis out of business by way of police harassment, closing roads, shutting off utilities without notice, and driving away customers by conducting meritless warrantless and unlawful raids during the June 14, 2013, raid, patrons of Dynasty were beaten and Willis herself arrested for protesting the beating and arrest of her son David Knight before her very eyes.

52.     During the June 14, 2013 raid, Lt. Harris requested that Willis come out side and talk to him. At this point, Willis heard her son screaming for help and Willis ran to the West side of the building and saw her son being beaten and sprayed with mace while restrained and in police custody. Willis

began asking why they were beating her son and asked the officers to stop, at which point and time Willis was told to shut up and go away. Again Willis protested the arrest and beating of her son. Agitated by Willis's protest, Officer Morris retaliated against Willis by placing her under arrest and throwing her against the patrol car, injuring Willis's neck and requiring medical attention.

53.     After throwing Willis into the patrol car, Lt. Harris asked Willis to sign a document giving the Defendants permission to conduct the raid which they had already performed. Willis declined to give the Defendants permission for the unlawful raid and subsequent search which they had already conducted.

54.     The officers knowingly lacked reasonable suspicion and probable cause for the unlawful search and seizure of Willis's property. Several officers have already testified, under oath, that they lacked probable cause for a search warrant. Additionally, these raids and other forms of harassment have been encouraged and promulgated, at least in part, by Dupree and the administration of Hattiesburg in retaliation for Willis exercising her First Amendment rights and refusing to support Dupree in the 2013 mayoral election.

SPECIFIC ALLEGATIONS - CHARMAINE WILLIS

55.     Plaintiffs hereby adopt and re-allege all previous stated paragraphs as though fully restated herein.

56.     Charmaine Willis (hereinafter "Charmaine") is the sister of David Knight and daughter of Sandra Willis.

57.     Charmaine arrived at Dynasty to see the police raid in progress. Upon arriving at Dynasty, Charmaine saw her brother lying on the ground bloody and beaten while officers were placing her mother in a patrol car.

58.     Charmaine began to lawfully protest the scene which she was viewing, wanting to know why her brother was bloody and bruised and why her mother was being arrested.  Charmaine was told to "shut the f*ck up" and get away.  Charmaine just wanted to know what was going on and why her family was being treated this way.

59.     Visibly agitated by Charmaine's protest, officers placed Charmaine under arrest and placed her in a patrol car in retaliation for her protest.  The officer then slammed Charmaine's leg in the door causing a severe contusion and injury to Charmaine's ankle since this injury, Charmaine's leg has been amputated because of complications with diabetes.

60.     Charmaine is a severe and brittle diabetic.  Upon arriving at the jail, officers discovered that Charmaine's blood sugar was dangerously high.  Instead of giving Charmaine medical care, the jail chose to release Charmaine to avoid any liability from complications of diabetes.  Luckily, Charmaine made it home in time to take her much needed medication.

## SPECIFIC ALLEGATIONS - DESMOND EARL

61.     Plaintiffs hereby adopt and re-allege all previous stated paragraphs as though fully restated herein.

62.     On June 14, 2013 Desmond Early (hereinafter "Earl") was in the vicinity in and around Dynasty celebrating Juneteenth with other individuals.

63.     Later in the day, and just prior to the raid, Earl traversed 4th Street to arrive at Dynasty where he found Knight and others gathered on the patio on the rear eastern corner of Dynasty.  Earl leaned against the wall and conversed with Knight about Earl's new album and Earl having a performance later on.

64. While Earl was conversing with Knight, the police raid came up behind Earl as they neared the corner. Earl was immediately thrown to the ground and kicked as the raid started. Earl was punched and kicked in the face as evidenced by wounds which are clearly visible in police photographs.

65. No officer made any notations about Earl resisting arrest or being disorderly or dangerous, yet Earl was still beaten into submission by the officers conducting the unlawful raid and arrested despite no reasonable grounds for such action.

SPECIFIC ALLEGATIONS - DEANGELO WILKERSON

66. Plaintiffs hereby adopt and re-allege all previous stated paragraphs as though fully restated herein.

67. DeAngelo Wilkerson (hereinafter "Wilkerson") is a wheel chair bound African-American male who is paralyzed from the waist down.

68. Wilkerson, like other individuals that day, was merely sitting outside behind Dynasty celebrating Juneteenth with the rest of the Dynasty patrons enjoying barbecue and games with friends.

69. When the raid began, Wilkerson was sitting in his wheelchair adjacent to the patio behind Dynasty.

70. Wilkerson, who posed no threat to anyone or any property, was thrown from his wheelchair by officers and forced to lie in the dirt during the raid. When officers finally placed Wilkerson back in his chair, which was damaged in the raid, several officers asked Wilkerson if he had soiled himself again .

71.     Wilkerson was injured, embarrassed, and his wheelchair sustained damage as result of the excessive force used by the officers conducting the unlawful raid on Dynasty.

SPECIFIC ALLEGATIONS - GREGG GLASS

72.     Plaintiffs hereby adopt and re-allege all previous stated paragraphs as though fully restated herein.

73.     Gregg Glass (hereinafter "Glass") is a barber and hair stylist and Dynasty. Glass's car was parked behind Dynasty.

74.     On June 14, 2013 Glass was working at Dynasty when the raid began. Glass looked on from a window overlooking the back area and witnessed officers beating several parties who were unfortunate enough to be behind Dynasty when the unlawful raid began.

75.     Glass also witnessed Knight being thrown between Glass's car and some other car. During the raid and beatings of other parties, officers kicked the mirrors off of Glass's car, and broke the side panel and dented the hood by throwing innocent bystanders against it.

**IV. ALLEGATIONS OF LAW**

76.     Plaintiffs incorporate by reference each of the preceding paragraphs as if they had been fully restated herein.

77.     All acts of the Defendants were under the color and pretenses of the ordinances, policies, practices, customs, regulations, usages and/or statutes of the United States Government, the State of Mississippi and the City of Hattiesburg.

78.     Defendant Harris in his official capacity as Lieutenant was a final policy maker capable of Ratification for Defendant Hattiesburg.

79.     Defendant Johnny Dupree, in his official capacity as mayor of Hattiesburg, was a final policy maker for Defendant Hattiesburg.

80.     Defendant Bolton, in his official capacity as police chief, was a final policy maker capable of ratification for defendant Hattiesburg.

81.     It is the custom and policy of all Defendants to violate the procedural and substantive due process rights of individuals in and around the area of 4th Street where the unlawful raid occurred, whereby Defendants routinely and unconstitutionally "stop and frisk and harass" individuals hoping to create exigent circumstances to justify an arrest.

82.     The City and its police department have a history of harassing people in and around this area of 4th Street. It is the policy and custom of the Defendants to, in violation of Plaintiffs' rights, unlawfully harass and interfere with Plaintiffs' rights.

83.     It is the custom and policy of all Defendants to violate the search and seizure rights of citizens in and around the area of 4th Street where the unlawful raid occurred.

84.     It is the policy and procedure of the Defendants to violate the First Amendment rights of citizens who protest policy activity and unlawful arrest.

85.     It is the policy and practice of the Defendants to violate the civil rights of minority citizens in and around the area of 4th Street where the unlawful raid occurred.

86.     It is the policy and custom of Defendants to falsely arrest and maliciously prosecute citizens in the area of 4th Street where the unlawful raid occurred.

87.     Defendants did not have reasonable suspicion and/or probable cause to search and seize property and persons at 2406 W. 4th Street.

88.     Defendants did not follow their own policy of procedure in responding to an earlier call for service at 2406 W. 4th Street, which was made by an individual not on the scene.

89.     Defendants failed to train and/or supervise their subordinates to prevent the actions described herein.

90.     Defendants' actions were in bad faith and were intended and designed to punish Plaintiffs.

91.     At all times relevant to this action, Plaintiffs' rights were clearly established. At all times relevant to this action, Defendants violated Plaintiffs' constitutional rights.

92.     Defendants' actions evidence malice and/or constitute willful misconduct.

93.     As a result of Defendants' actions, Plaintiffs have suffered injuries, humiliation, embarrassment, loss of reputation and had their liberty and privacy interests severely impacted.

### V.  COUNT I IN VIOLATION OF 42 U.S.C. 1983
**(Fourth Amendment/Fourteenth Amendment - Unlawful Seizure)**
**(Against All Defendants)**

94.     Plaintiffs incorporate by reference each of the preceding paragraphs as if they had been fully restated herein.

95.     The unlawful actions of the Defendants, as alleged herein, constituted an intrusion into Plaintiffs' right to be free from an unlawful seizure of their person.

96.     Defendants had an affirmative duty to prevent such intrusions.

97.     Defendants, acting without authority, knowingly conducted an illegal search of the property, creating alleged exigent circumstances, and resulting in Plaintiffs' unlawful seizure and incarceration.

98.     Defendants, acting knowingly, maliciously, willfully and wantonly, and evincing a complete and utter disregard and deliberate indifference for the rights of the Plaintiffs, unlawfully raided and searched the subject property, despite no officer witnessing any illegal activity, despite having ample

time to procure a search warrant, and despite lacking any reasonable suspicion or probable cause.

99.     Plaintiffs have an established constitutional right to be free from an unlawful search, seizure and confinement.

100.     As a direct and proximate cause of Defendants' actions, Plaintiffs' rights, as guaranteed by the Fourth and Fourteenth Amendments, were injured.

WHEREFORE Plaintiffs pray for relief against all Defendants as set forth below.

## VI.  COUNT II IN VIOLATION OF 42 U.S.C. 1983
### Fourth Amendment/Fourteenth Amendment - Unlawful Search
### Against All Defendants

101.     Plaintiffs incorporate by reference each of the preceding paragraphs as if they had been fully restated herein.

102.     The unlawful actions of Defendants, as alleged herein, deprived Plaintiffs of their rights to be free from an unlawful search.

103.     As a direct and proximate cause of Defendants' actions, Plaintiffs' rights, as guaranteed by the Fourth and Fourteenth Amendment, were injured.

WHEREFORE Plaintiffs pray for relief against all Defendants as set forth below.

## VII.  COUNT III IN VIOLATION OF  42 U.S.C. 1983
### Fourth Amendment/Fourteenth Amendment - False Imprisonment

104.     Plaintiffs incorporate by reference each of the preceding paragraphs as if they had been fully restated herein.

105.     The unlawful actions of Defendants, as alleged herein, deprived Plaintiffs of their rights against false imprisonment.

106.     Defendants recklessly, knowingly, intentionally, willfully and wantonly arrested and imprisoned Plaintiffs with the understanding that the search giving rise to the charge was

unconstitutional.

107.    No reasonable officer in Defendants' position, with the information each had in his or her possession when seeking the search and arrest of Plaintiffs, would have found that the raid was constitutional.

108.    Based on the acts described herein, the process by which Plaintiffs were wrongfully searched, arrested and confined was so wholly lacking in the concept of justice in a civilized society, that Plaintiffs were never actually provided legal process and, therefore, were falsely imprisoned by Defendants.

109.    Defendants Hattiesburg, Bolton and Dupree, as supervisors of Defendants, respectively, recklessly, knowingly, intentionally, willfully and wantonly, participated in, knew of, condoned and/or approved the wrongful acts of Defendants described herein, with the intent and understanding to bring about Plaintiffs' unconstitutional arrests, search, and confinement.

110.    As a direct and proximate cause of Defendants' actions, Plaintiffs' rights, as guaranteed by the Fourth and Fourteenth Amendments, were injured.

WHEREFORE Plaintiffs pray for relief against all Defendants as set forth below.

## VIII.  COUNT IV IN VIOLATION OF 42 U.S.C. 1983
### First Amendment - Free Speech

111.    Plaintiffs incorporate by reference each of the preceding paragraphs as if they had been fully restated herein.

112.    Plaintiffs have a First Amendment right to protest the unlawful search, seizure and force used by the Defendants.

113.    Plaintiff have a First Amendment right to refuse to support certain political candidates in an election.

114.    Plaintiffs' First Amendment rights are clearly established.

115.    Defendants retaliated against Plaintiffs for exercising their First Amendment rights by use of excessive force and arresting and harassing Plaintiffs without just cause following an unlawful search and seizure.

116.    As a direct and proximate cause of Defendants' actions, Plaintiffs'' rights, as guaranteed by the First Amendment, were injured.

WHEREFORE Plaintiffs pray for relief against all Defendants as set forth below.

## IX.  COUNT V IN VIOLATION OF 42 U.S.C. 1983
### Excessive Force in Violation of the Fourteenth Amendment

117.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully restated herein.

118.    On June 14, 2013 the Defendants used excessive force upon the Plaintiffs during an unlawful search and seizure of the subject property.

119.    Specifically, but not inclusively:

a.      Sandra Willis was thrown against a patrol car with such force as to injure her neck;

b.      Charmaine Willis received injuries to her body when officers slammed the door on Charmaine's leg;

c.      DeAngelo Wilkerson was thrown from his wheel chair and left lying helpless on the dirt;

d.      Desmond Earl was tackled, kicked and beaten by officers;

e.      David Knight was tackled, beaten, handcuffed, sprayed with pepper spray and, again, beaten and sprayed while handcuffed.

120.    Plaintiffs have a constitutional right to bodily integrity and to be free from the use of excessive force and outrageous and unreasonable force, which shocks the conscience and offends

traditional notions of decency.

121.    Plaintiffs have a right to be free from the use of deprivation of life and liberty without due process of law.

122.    Plaintiffs' rights were clearly established and violated by the Defendants' actions as described herein.

## X. <u>COUNT VI IN VIOLATION OF 42 U.S.C. 1985</u>

123.    Plaintiffs incorporate by reference each of the preceding paragraphs as if they had been fully restated herein.

124.    Defendants conspired to deprive Plaintiffs of their Constitutional rights through continued harassment, the use of force, and through the unlawful search and seizures.

125.    A meeting of the minds occurred when Defendants chose to conduct the unlawful raid on Dynasty hair salon.

126.    Defendants knew full and well that the actors committing the harassment and raid would continue to do so, evidencing Defendants' conspiracy to deprive Plaintiffs of their Constitutional rights.

WHEREFORE Plaintiffs pray for relief against all Defendants as set forth below.

## XI. <u>COUNT VII IN VIOLATION OF 42 U.S.C. 1983</u>
### (State Law Claims)

127.    Plaintiffs incorporate by reference each of the preceding paragraphs as if they had been fully restated herein.

128.    Plaintiffs served the City of Hattiesburg and the Hattiesburg Police Department with notice of this action pursuant to the Mississippi Tort Claims Act and more than ninety (90) days have passed since its service. **Exhibit A**.

129.     The actions of all Defendants named and described supra constitute the torts of negligence, gross negligence, trespass, excessive force, assault, battery, defamation, negligent training, negligent supervision, malicious prosecution, harassment, conspiracy, outrage, and false imprisonment.

130.     The actions of Defendant Johnny Dupree, in his individual capacity, constitute the tort of malicious interference with business relations, conspiracy, harassment, and outrage.

WHEREFORE Plaintiffs pray for relief against all Defendants as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

a.     Assume jurisdiction over this action;

b.     Declare that Defendants' actions, as herein described, violated Plaintiffs' constitutional rights under the First, Fourth and Fourteenth Amendments to the United States Constitution

c.     Appropriate equitable relief including but not limited to prospective injunctive relief, declaratory and other injunctive remedies;

d.     Award Plaintiffs nominal and actual damages for Defendants violation of their constitutional and statutory rights;

e.     Awards Plaintiffs compensatory damages, including, but not limited to, those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, loss of reputation, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

f.     Punitive damages for all claims allowed by law in an amount to be determined at trial;

g.     Pre-judgment and post-judgment interest at the highest lawful rate;

h.     Award Plaintiffs their costs of litigation, including reasonable attorney's fees and expenses,

pursuant to 42 U.S.C. sec. 1988 and/or 20 U.S.C. sec. 1400 et seq.; and

i.      Grant such other relief to which Plaintiffs may be entitled or as this Court deems necessary

and proper.

Respectfully submitted this the 13th day of June, 2014.

_____
DANIEL M. WAIDE, ESQ.
ATTORNEY FOR PLAINTIFFS


OF COUNSEL:

DANIEL M. WAIDE, MSB NO. 103543
SAMUEL S. McHARD, MSB NO. 100295
McHARD & ASSOCS., PLLC
15 MILBRANCH ROAD
HATTIESBURG, MS   39402
TELEPHONE:   (601) 450-1715
FACSIMILE:    (601) 450-1719
dwaide@mchardlaw.com
smchard@mchardlaw.com