IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**SANDRA WILLIS et al.**                                                                                       **PLAINTIFFS**

**v.**                                                                      **CIVIL ACTION NO. 2:14-CV-89-KS-MTP**

**CITY OF HATTIESBURG, MISSISSIPPI et al.**                                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Second Motion *in Limine* [216] filed by Defendants City of Hattiesburg, Frazier Bolton, Scott Morris, Jason Reed, Stephon Harris, and Johnny DuPree and the Motion *in Limine* [217] filed by Plaintiffs Sandra Willis, David Knight, Charmaine Willis, Desmond Earl, Gregg Glass, and Deangelo Wilkerson.  After considering the submissions of the parties, the record, and the applicable law, the Court finds that both motions should be granted in part and denied in part.

**I.  BACKGROUND**

Plaintiffs Sandra Willis, David Knight, Charmaine Willis, Desmond Earl, Gregg Glass, and Deangelo Wilkerson (collectively "Plaintiffs") bring this action against Defendants City of Hattiesburg (the "City"), Frazier Bolton, in his official capacity as Hattiesburg Chief of Police, Officer Scott Morris, Officer Jason Reed, Lieutenant Stephon Harris, and Johnny DuPree, individually and in his official capacity as Mayor of Hattiesburg (collectively "Defendants"), in connection with a raid conducted on the Dynasty Hair Salon ("Dynasty") on June 14, 2013. Plaintiffs bring multiple federal and state claims against Defendants in connection with this raid, the pertinent facts of which are laid out below.

At approximately 7:30 P.M. on June 14, 2013, officers of the Hattiesburg Police Department's specialized Neighborhood Enhancement Team ("NET") and STRIKE team conducted

a raid on Dynasty after receiving information of illegal activity being conducted there.  Plaintiffs claim that they were wrongfully searched, were victims of excessive force, and were unlawfully arrested during the raid.  No warrant was ever obtained for this raid or any of the accompanying arrests.

Plaintiffs were charged with misdemeanors, and a trial on these charges was held in the Municipal Court of Hattiesburg, Mississippi (the "Municipal Court").  Plaintiffs were convicted in Municipal Court and appealed to the County Court of Forrest County, Mississippi (the "County Court"), where the Municipal Court's convictions were vacated and Plaintiffs were granted a trial *de novo*.  Plaintiffs filed a motion to suppress, claiming that evidence obtained during the raid should be excluded because the officers did not have the right to search Dynasty, as the area searched was not open to the public, the officers had no warrant or consent, and there were no exigent circumstances.  The County Court agreed and granted the motion to suppress.  Finding insufficient proof to warrant convictions, the County Court dismissed the remaining charges pending against Plaintiffs.

Parties bring multiple evidentiary issues in their motions *in limine.*  After considering the submissions of the parties, the record, and the applicable law, the Court is now ready to rule.

## II.  DISCUSSION

### A.  Defendants' Second Motion *In Limine* [216]

#### 1.  Evidence of Police Gang Affiliation

Defendants argue that all evidence Plaintiffs purport to offer that they are affiliated with a police gang is inadmissible as irrelevant, improper character evidence, and unfairly prejudicial.  Plaintiffs argue that this evidence is relevant to prove motive and bias.

Plaintiffs contend that the evidence shows that Defendants are "part of a 'brotherhood' or gang that prides themselves in kicking in doors on fearful people." (Response [222] at p. 5.) This evidence includes "photographs with tattoos, hand signs and shirts." (*Id.*) Plaintiffs make the extraordinary claim that this evidence is the equivalent of "photos of the police defendants in white robes and hoods at a KKK meeting." (*Id.*) This wildly mischaracterizes the photos in question. The shirts depicted have variations of the NET acronym, lists of NET team members, a graphic of an officer standing over a kicked-in door with the words "Ten Year and Still Kicking," and one saying "Brotherhood Since 1994 'Showtime.'" (*See* Photos [216-2].) The tattoo shared by all the NET members is a Chinese symbol, and the hand sign shown in a photo of the members is peace sign over the heart. (*See id.*) Nothing about these photos suggest the type of racial animus a photo of them in the white robes of the Ku Klux Klan, let alone the overwhelming magnitude of racial animus such a hypothetical photograph would have. The actual photos in question show no suggestion of an improper motive on behalf of the Defendants, and the Court cannot find them relevant to Plaintiffs' case-in-chief under F.R.E. 401, and they will not be admitted under F.R.E. 402.

Nevertheless, this evidence may still be relevant for impeachment purposes. The sense of "brotherhood" among the NET team members is certainly probative of bias if one NET team member is testifying against the other. Therefore, the evidence will be allowed for this purpose should it become relevant for impeachment purposes.

Defendants' Second Motion *In Limine* [216] will therefore be **granted in part** and **denied in part** with respect to evidence of a purported police gang. It is **granted** in that this evidence is irrelevant to Plaintiffs' case-in-chief and must be excluded. It is **denied** in that this evidence may become relevant for impeachment purposes.

### 2.     Use of Force Reports

Defendants seek to have excluded as irrelevant certain internal investigations and findings regarding the incident conducted by the Hattiesburg Police Department (the "Department"). These reports ultimately conclude that "the use of force [was] outside [the Department's] policy and procedure." (Department Review [216-3].) Plaintiffs argue that these reports "are investigations of the incident which resulted in penal measures that should have been taken but apparently were not," and claim that they are "highly relevant" and that they further "show evidence of the City's condonation of the use of excessive force, which lean[s] in favor of liability against the City." (Response [222] at p. 6.)

The Court would first note that the reports have no relevancy on Plaintiffs' § 1983 claims against the individual Defendants for excessive force as the standard used to make that determination is not the standard used in a constitutional use of force analysis. *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (citing *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004) (holding that violations of state law were "not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights"); *see also Stern v. Tarrant Cnty. Hosp. Dist.*, 778 F.2d 1052, 1059 (5th Cir. 1985) ("a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation"). If a violation of state law is not relevant in the determination of a § 1983 claim, the Court cannot find that a violation of a municipal's policies and procedures is.

As for the reports' relevance to the City's liability, the Fifth Circuit has held that the failure of a municipality to adequately investigate alleged constitutional violations after the fact is not a basis for municipal liability. *Milam v. City of San Antonio*, 113 F.App'x 622, 628 (5th Cir. 2004).

According to the Fifth Circuit,

> First, this record does not present a situation where the policymakers have approved the decision and the basis for it. That the policymakers failed to take disciplinary action in response to Milam's complaints does not show that they knew of and approved the illegal character of the arrest, determining that it accorded with municipal policy. Second, it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation.

*Id.* (internal citations and quotations omitted) (emphasis in original). Under the holding in *Milam*, then, the Court cannot say that the reports have any bearing on the liability of the City, as even if they showed that the Department did not properly investigate or punish the individual officers, it would have no relevance to municipal liability as to Plaintiffs' excessive force claim.

As the Court does not find these reports to be relevant, Defendants' Motion *In Limine* [216] will therefore be **granted** with respect to them, and they will be excluded from evidence.

### B.   Plaintiff's Motion *In Limine* [217]

#### 1.   Evidence of Subsequent Crimes

Plaintiffs ask that the Court exclude as irrelevant any evidence of subsequent crimes occurring in or near Dynasty after the night of June 14, 2013. Defendants argue that they should be allowed to introduce evidence of any alleged crimes *prior* to that night, but make no argument as to those that occurred *subsequent* to the events at issue. The Court agrees with Plaintiffs that any activity happening in or near Dynasty after June 14, 2013, should be excluded as irrelevant and unfairly prejudicial and will **grant** their Motion *In Limine* [217] as to this issue.

#### 2.   Evidence or Reference to Charges Not Pursued

Plaintiffs request that the Court exclude any evidence of activity occurring at Dynasty, such as boxing or excessive noise, which may violated a law or city ordinance but for which no criminal

charge was brought. They argue that such evidence is irrelevant under F.R.E. 401, and unfairly prejudicial under F.R.E. 403. Defendants respond by pointing out that the officers knowledge of the activities in the salon is highly probative of the reasonableness of their actions.

Adjudication of Fourth Amendment claims "requires careful attention to the facts and circumstances of each particular case." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 398, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)). The reasonableness of the officers' conduct is judged "from the perspective of a reasonable officer on the scene." *Id.* (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865). This makes the knowledge of the officers on the scene highly relevant, including knowledge of activity, illegal or not, which was occurring at the time or had occurred previously. The Court will therefore not exclude it under F.R.E. 402 as irrelevant.

F.R.E. 403, however, excludes evidence which is ordinarily admissible if its probative value is substantially outweighed by the danger of unfair prejudice. Though this evidence may unfairly prejudice them, Plaintiffs do not articulate how this prejudice *substantially* outweighs the highly probative value, nor would the Court find such an argument persuasive. The Motion *In Limine* [217] will therefore be **denied** with respect to this evidence.

### 3. Confidential Informants

Plaintiffs make two arguments as to Defendants' confidential informants. First, they argue that the reports by the confidential informants relied upon by the officers should be excluded as hearsay. Second, they argue that Defendants should be barred from using information from confidential informants because they have not disclosed the identities of these informants as required by Federal Rule of Civil Procedure 26.

Under F.R.E. 801, a statement is only hearsay if it is offered "to prove the truth of the matter asserted in the statement." The reports by the confidential informants are not offered to prove the truth of what they contain, but rather to prove the existence of those reports and the officers' state of mind in relying upon them. Therefore, they are not hearsay and will not be excluded as such. Further, this Court has already ruled that Plaintiffs have not demonstrated that they are entitled to know the identity of the confidential informants. (*See* Order [103] at p. 9.) The evidence will therefore not be excluded for failure to disclose under Rule 26. The Motion *In Limine* [217] will therefore be **denied** as to this issue.

### 4. Settlement Negotiations

Plaintiffs request that Defendants be precluded from making any reference to any settlement negotiations or agreements. Defendants have agreed that they will not do so. Finding the parties in agreement, the Motion *In Limine* [217] will be **granted** as to this issue.

### 5. Exhibits Not Authenticated During Discovery

Plaintiffs ask that Defendants be barred from using exhibits not properly authenticated during discovery, but make no reference to any specific exhibit. Regardless, Defendants bear no burden to authenticate exhibits during discovery, and the motion will be **denied** as to this request.

### 6. Witnesses Not Identified During Discovery

Plaintiffs ask that Defendants be barred from calling witnesses not identified during discovery, and Defendants have said that they do not intend to do so. The motion will be **granted** as this issue.

### 7. Arguments that Plaintiff Failed to Call a Witness

Plaintiffs argue that Defendants should be precluded from making any opinion or statement

as to Plaintiffs' failure to call a witness, but contend that they should be allowed to give an opinion or statement if Defendants fail to call its own employees or agents as witnesses. Plaintiffs point to no specific witness, which they will not call, to show that such opinions or statements are not appropriate. Furthermore, the burden of proving each element of their claims is on the Plaintiffs, and Defendants may discuss any failure of proof they wish, including the failure to offer evidence through a witness.[1] Plaintiffs' Motion *In Limine* [217] will therefore be **denied** as to this argument.

### 8.     Individuals not Identified

This request repeats Plaintiffs' arguments from above, *see supra* II.B.6, and will be **granted** to the same extent.

### 9.     Contradictory Testimony

Plaintiffs ask that Defendants should be barred from offering testimony that conflicts with the depositions of the individual Defendants taken previously. Such contradictions in testimony are best addressed by cross-examination, and not through exclusion on a motion *in limine*. Plaintiffs' motion will therefore be **denied** as to this issue.

### 10.    Probable Cause Argument

Plaintiffs argue that Defendants should be precluded from arguing that they had probable cause to enter the private area of Dynasty as this issue has already been decided by the Final

---

[1] The Court would note that the authorities offered by Plaintiffs in support of their arguments, to the extent that they even deal with the issue of a failure to offer a witness, are not relevant here. *Daniels v. Beeson*, 312 So.2d 441, 443 (Miss. 1975) deals with spousal privilege, *Fruehauf Corp. v. Trustees of First United Methodist Church*, 387 So.2d 106, 111 (Miss. 1980), deals with a party's failure to offer his own expert witness and allows for a comment on that failure, and *United States v. MMR Corp. (LA)*, 907 F.2d 489, 495-96 (5th Cir. 1990), merely states that, absent special circumstances, a "lay witness need not be able to testify to the factual basis for his or her opinion."

Judgment of the County Court of Forrest County, Mississippi. In its previous Order [213], the Court held that issues decided in the Final Judgment of the County Court did not have preclusive effect because the defendant officers were not in privity with the prosecution. (*See* Order [213] at pp. 5-8.) The Court will therefore **deny** Plaintiffs' motion as to this argument.

### 11. Prior Lawsuits

Plaintiffs ask that no prior lawsuit be introduced, and Defendants agree but reserve the right to introduce such evidence if Plaintiffs themselves open the door to these lawsuits. The motion will therefore be **granted in part** and **denied in part** to this extent.

### 12. Tax Consequences of Verdict

Plaintiffs request that no mention be made as to the tax consequences of any verdict or judgment, and Defendants represent that they do not intend to offer such evidence. The motion will be therefore **granted** as this issue.

### 13. Motions *In Limine*

Plaintiffs ask that no reference to any motions *in limine* be made to the jury, and Defendants state they do not intend to make any such reference. The motion will therefore be **granted** as to this request.

### 14. Exhibits Lacking Foundation

Plaintiffs ask the Court to exclude all evidence that lacks foundation. Obviously all evidence that either is not stipulated to or which lacks a foundation is subject to exclusion, but the Court will not issue a blanket exclusion without any such evidence being before it. Plaintiffs' Motion *In Limine* [217] will therefore be **denied** as to this request.

### 15. Presence of Jury for Stipulations

Plaintiffs request that Defendants be barred from requesting Plaintiffs stipulate to the admissibility of evidence in the presence of the jury. Defendants respond by stating that, while exhibits may be offered into evidence in the presence of the jury, they anticipate any discussions as to the stipulation of evidence to occur outside its presence. Finding the parties in agreement, the Court will **grant** the motion to this extent.

### 16.     Arrests of Plaintiffs

Plaintiffs request that the Court bar Defendants from presenting evidence of any arrests of Plaintiffs. The Court is not sure which arrests Plaintiffs wish to have excluded. If they are referring to the arrests that are the subject of this litigation, the Court does not see how they could possibly be excluded as they are the basis for some of Plaintiffs' claims, particularly their claims of false arrest and false imprisonment. If Plaintiffs are referring to other arrests, the Court cannot make a determination as to their admissibility without the specifics of those arrests being before the Court. Plaintiffs' motion will therefore be **denied** as to this request. However, Plaintiffs will be allowed to re-urge this matter if evidence of other, specific arrests is brought before the Court.

### 17.     Impeachment on Collateral Matters

Plaintiffs wish to have Defendants precluded from any attempt to impeach them using matters collateral to this lawsuit or "which are not relevant nor germane to the claims made herein or defenses of Defendants without first demonstrating to the satisfaction of the Court a predicate for the relevancy and materiality of such matters." (Motion *In Limine* [217] at p. 9.) Plaintiffs make no reference to any particular evidence they wish to have excluded, and the Court will not grant such a vague request. Therefore, the Motion *In Limine* [217] will be **denied** as to this request.

### 18.     Impact on Taxpayers

Plaintiffs ask that any reference to the impact of a verdict on the taxpayers or any mention of the City's financial situation be excluded as irrelevant. The Court agrees that this type of evidence is irrelevant to the determination of Defendants' liability and the compensatory damages which may be award to Plaintiffs. However, this evidence may become relevant if punitive damages are awarded.[2] Therefore, this request will be **granted in part** and **denied in part** to this extent.

### 19. Failure to Call a Witness

This argument is identical to Plaintiffs' previous argument, *see supra* II.B.7, and will be **denied** to the same extent.

### 20. Unidentified Witnesses

This argument is identical to Plaintiffs' previous argument, *see supra* II.B.6, and will be **granted** to the same extent.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Second Motion *In Limine* [216] will be **granted in part** and **denied in part** as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs' Motion *In Limine* [217] will be **granted in part** and **denied in part** as outlined above.

SO ORDERED AND ADJUDGED this the 15th day of November, 2016.

> *s/ Keith Starrett*
> UNITED STATES DISTRICT JUDGE

---

[2] The determination of punitive damages, if any, will be bifurcated from the rest of the trial.